DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**EURI JENKINS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2022-1423

[December 20, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Kirk Charles Volker, Judge; L.T. Case No. 502017CF008721BXXXMB.

Tim Bower Rodriguez of Tim Bower Rodriguez, P.A., Tampa, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Luke Robert Napodano, Senior Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

Appellant was convicted of the first-degree murder of his wife and, on appeal, argues that the trial court erred by denying his motion for judgment of acquittal. Appellant alleges that the state failed to provide competent substantial evidence of his guilt, arguing that the state's only evidence was based on inconsistent statements made by two witnesses— appellant's friend as well as the codefendant—who lied during the investigation. We disagree and find that there was competent substantial evidence of guilt based, in part, on the trial testimony of these two witnesses who inculpated appellant in the crime. As such, we affirm.

The testimony elicited by the state, through multiple witnesses, established that a masked gunman, who was the codefendant, entered the home of appellant and his wife in the middle of the night. The masked gunman then shot the victim while she was sleeping.

At trial, the codefendant testified to being the masked gunman who shot the victim. The codefendant testified that appellant's friend had driven him to appellant's house, where appellant offered the codefendant $20,000 to kill the victim. The codefendant was in the friend's car when this conversation began. The codefendant visited appellant at his home again before the shooting. At some point, the two discussed how to kill the victim.

Appellant's friend testified that appellant said he was thinking of paying someone $900,000 to $1 million to kill his wife. Appellant asked his friend if he knew anyone who could shoot his wife. The friend introduced appellant to the codefendant, who the friend had brought to appellant's house. The codefendant was in the friend's car when appellant asked if the friend knew anyone who could kill his wife. The friend testified that appellant and the codefendant then began talking outside appellant's house about murdering the victim. The codefendant asked appellant how much he would be willing to pay. While appellant and the codefendant were speaking, the victim's brother came outside the house. Appellant's friend testified that the masked gunman was the codefendant, and the codefendant shot the victim.

Both the codefendant and the friend, while testifying, admitted to lying earlier in the investigation. The codefendant said he had lied earlier in the investigation, but was now telling the truth at trial because he had entered a plea agreement with the state. The codefendant pled guilty to second-degree murder with a weapon. Appellant's friend said he was initially untruthful with the police during the investigation because he did not want to be connected to the incident. The friend, who pled guilty to manslaughter with a weapon, testified that it took a while for him to accept responsibility for his actions, but the jury could believe his testimony now because he believed the victim's family "deserves justice."

The victim's brother, who was present during the shooting, also testified. The victim's brother saw a conversation occur between appellant and the codefendant at appellant's house before the shooting. The brother could not hear what they were saying because the codefendant was in the friend's car, and appellant was standing outside the car in the driveway. Before the victim was shot, the victim's brother had asked appellant if the masked gunman was the man that came to appellant and the victim's house earlier in the day, referring to the codefendant. Appellant told the victim's brother that the masked gunman was not the codefendant, because the codefendant had already gone home.

After the state rested, appellant moved for judgment of acquittal. Appellant argued that the state had presented two "contradictory" witnesses, the codefendant and the friend, who contradicted each other on issues such as how much money appellant paid the codefendant. The state responded that the witnesses' testimony was consistent with respect to the material facts of the case—that is, appellant asking for someone to kill the victim, and promising money to have his wife murdered. The trial court denied appellant's motion for judgment of acquittal, noting that although the two witnesses' testimonies did conflict in part, the witnesses also agreed on a number of material issues in the case. The trial court stated that the jurors could rely on their own conclusions as to the witnesses' credibility. This appeal follows.

"In reviewing a motion for judgment of acquittal, a de novo standard of review applies." *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). "A trial court should not grant a motion for judgment of acquittal 'unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt.'" *State v. Lee*, 230 So. 3d 886, 888 (Fla. 4th DCA 2017) (citation omitted). "Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence." *Pagan*, 830 So. 2d at 803.

Appellant argues that the only evidence of his guilt was the "inconsistent statements" of the friend and the codefendant. Appellant relies primarily on two cases: *Moore v. State*, 473 So. 2d 686 (Fla. 4th DCA 1984), and *Baugh v. State*, 961 So. 2d 198 (Fla. 2007). Both *Moore* and *Baugh* are distinguishable from the instant case.

In *Moore*, the grand jury indicted the defendant based on two witnesses' testimonies that identified the defendant as the murderer. 473 So. 2d at 686. The two witnesses then recanted their statements identifying the defendant as the murderer in a later deposition. *Id.* Before the defendant's murder trial, the two witnesses were prosecuted for perjury and admitted to lying before the grand jury. *Id.* at 686-87. In the defendant's murder trial, the state attempted to rely on the witnesses' prior statements made to the grand jury as substantive evidence of the defendant's guilt. *Id.* at 688. This court held that, while prior inconsistent statements are admissible as substantive evidence, the prior inconsistent statements in *Moore*, which were "admittedly perjured testimony," standing alone did not constitute sufficient competent evidence to support the appellant's conviction for second-degree murder. *Id.*

In *Baugh*, a witness, an alleged victim of child sexual battery, "totally repudiate[d] her out-of-court statements at trial." 961 So. 2d at 200. The

Florida Supreme Court reiterated that a prior inconsistent statement standing alone is insufficient to sustain a conviction without corroborating evidence. *Id.* The state attempted to present corroborating evidence of the witnesses' out-of-court statements pursuant to section 90.803(23), Florida Statutes (2001), the hearsay exception for statements of a child victim, but the evidence created only an inference that the defendant may have committed the crime charged. *Id.* at 202. Thus, because the only direct evidence of the defendant's guilt presented at trial was prior inconsistent statements recanted during in-court testimony, the defendant's conviction could not be sustained. *Id.* at 203, 205.

Both cases are distinguishable from the instant case. In *Moore* and *Baugh*, the incriminating statements were made before trial, not at trial. In both cases, the prior incriminating statements were later recanted either before or at trial. In the instant case, the witnesses made statements implicating appellant at trial. Both appellant's friend and the codefendant testified that appellant had hired the codefendant for the murder of the victim. Thus, the state was not relying at all on prior inconsistent statements as substantive evidence of appellant's guilt. The state relied on the witnesses' testimony at trial. *Baugh* is further distinguishable because it relied on the hearsay exception for statements of a child victim present in section 90.803(23), which allows "recanted statements" to "sustain a sexual battery conviction 'when other *proper corroborating evidence* is admitted.'" 961 So. 2d at 204 (citation omitted). Thus, *Moore* and *Baugh* are inapplicable to the instant case as presented by appellant.

Further, a witness's statements at trial may still sustain a conviction even if the witness admitted to previously lying during an investigation. *Smith v. State*, 507 So. 2d 788, 790 (Fla. 1st DCA 1987). In *Smith*, the witness told several different stories to investigators, and the chief of police testified that the witness "had obviously lied many times during the investigation." *Id.* at 789. The witness testified at trial, and admitted to lying several times during the investigation, but maintained that his trial testimony was true. *Id.* The witness's testimony was "essentially uncorroborated." *Id.* Nevertheless, the court held that the "admitted liar['s]" uncorroborated testimony was still sufficient to support the verdict. *Id.* at 790.

Similarly, in the instant case, even though the witnesses admitted to lying earlier in the investigation, they maintained that their trial testimony was truthful. Even if the friend's and the codefendant's testimony was uncorroborated, it can still be sufficient to sustain appellant's conviction. However, in this case, the state did present corroborating evidence from

the victim's brother, who testified that the masked gunman looked like the codefendant. The brother also testified that he saw appellant and the codefendant speaking in the friend's car. The brother's testimony corroborated, in part, the codefendant's and the friend's testimony. Thus, the trial court did not err by denying appellant's motion for judgment of acquittal.

Lastly, appellant argues that the friend and the codefendant "have no credibility." Clearly, "[t]he credibility of an accomplice and the weight to be given his testimony is a matter for the jury." *Smith*, 507 So. 2d at 790. "Where there is contradictory, conflicting testimony, 'the weight of the evidence and the witnesses' credibility are questions solely for the jury,' and 'the force of such conflicting testimony should not be determined on a motion for judgment of acquittal.'" *State v. Konegen*, 18 So. 3d 697, 700 (Fla. 4th DCA 2009) (citation omitted). Thus, since this determination is in the domain of the jury, and is not for us as judges to second guess, we find no merit to appellant's argument that the witnesses lacked credibility.

We conclude that the trial court did not err in denying appellant's motion for judgment of acquittal because there was competent substantial evidence supporting appellant's conviction. As such, we affirm.

*Affirmed.*

MAY and ARTAU, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

5